BOOTH, Judge.
This cause is before us on appeal of an order licensing appellee Seacrest Cadillac, Inc. as a new Cadillac motor vehicle dealer in Port Richey, Florida. After careful consideration, we affirm.
The record reflects that three Cadillac dealers are currently operating in the Tampa Bay Multiple Dealer Area (MDA). Appellant is closest to the proposed dealership site and the only dealer to file a protest. Appellant argues, inter alia, that this court’s rulings in Bill Kelley Chevrolet, Inc. v. Calvin, 308 So.2d 199 (Fla. 1st DCA 1974) (Bill Kelley I), and Bill Kelley Chevrolet, Inc. v. Calvin, 322 So.2d 50 (Fla. 1st DCA 1975), cert. denied, 336 So.2d 1180 (Fla.1976) (Bill Kelley II), precluded the Department of Highway Safety and Motor Vehicles from issuing the license. Appellant contends that the Bill Kelley I and II rulings required appellee General Motors Corporation (GM) to prove inadequate dealer representation by a different method than the method used and accepted by the agency in the proceedings below.
Section 320.642, Florida Statutes (1987), requires denial of new dealer licenses to establish additional dealerships in a “community or territory” where existing dealers are already adequately representing their manufacturers and are in compliance with their franchise agreements. The statute, however, does not define “community or territory.”
In Bill Kelley I, this court remanded for a determination of whether, in that case, the statutory community or territory was the same as the Greater Miami MDA specified in the relevant dealer/manufacturer franchise agreement. The opinion stated, “We do not here hold that the director [of the Division of Motor Vehicles of the Department of Highway Safety and Motor Vehicles] is bound by the contract, nor do we hold that he is not; but we do hold that such is a material fact which should be shown to have been at least considered by the director.”
On remand, the director determined that the statutory “community or territory” was the same as the Miami MDA specified in the franchise agreement. This court, in Bill Kelley II, affirmed, holding that even though the individual and overall performance of the existing dealers was more than satisfactory, all parts of the territory were not adequately served. Therefore, the manufacturer was not precluded from seeking additional representation if it could show “an identifiable plot not yet cultivated, which could be expected to flourish if given the attention which the others in their turns received.” Bill Kelley II, 322 So.2d at 51. The court further noted that the purpose behind Section 320.642, Florida Statutes, was “not to foster combinations to prevent the introduction of dealer competition which is reasonably justified in terms of market potential,” and concluded (322 So.2d at 52):
[W]e decline to transform the nonexclusive multiple dealer area of Dade and Broward into an exclusive territory in which twelve existing dealers are protected from border to border from further competition notwithstanding their inadequate representation of Chevrolet in an identifiable part of the territory.
Both sides in the instant case rely on the Bill Kelley decisions.
The record before us in this case shows that GM proved below that the Tampa Bay MDA was defined and designated at least 50 years ago. Since then, demographic shifts created what were essentially two independent markets, one on the east side of the bay and the other on the west side. GM argued that, consequently, the relevant community or territory included only the western market (western part of the MDA) where it sought the new dealership. By further showing that the northern part of that western market was faring poorly against competitor dealers of large, luxury vehicles, GM was able to demonstrate that there was an identifiable, “uncultivated plot” within the community or territory at issue.
Appellant argued that, under Bill Kelley I and Bill Kelley II, the entire MDA was the community or territory as a matter of law. Consequently, it argued that appellees gerrymandered the figures by compar *138 ing the northern part of the west bay area to the remainder of the west bay area, rather than to the entire Tampa Bay MDA. We are unable to accept that view of the language in the Bill Kelley cases. Neither Bill Kelley I nor Bill Kelley II holds that the entire MDA constituted the statutory community or territory. In fact, Bill Kelley I expressly declined to rule on that question and remanded for a factual determination of whether the MDA was, or was not, the community or territory in that case.
In short, while the MDA specified in the franchise agreement is entitled to great weight in determining the relevant “community or territory” under Section 320.642, Florida Statutes, it is not conclusive of the question. See Bill Kelley I at 201; Bill Kelley II at 52. Where exceptional changes and conditions exist, manufacturers may prove that a real, distinct, and separate market area exists within the MDA and that that market area is the statutory community or territory.
Accordingly, the order below is AFFIRMED.
MINER and ALLEN, JJ., concur.